ROBERT C. SMITH, Individually and as Administrator of the Estate of AMY L. SMITH, Deceased, Appellant, v FISHKILL HEALTH-RELATED CENTER, INC., et al., Defendants, and COUNTY OF DUTCHESS et al., Defendants and Third-Party Plaintiffs-Respondents. WERNER COHN, Third-Party Defendant-Respondent. (And Another Third-Party Action.)

Third Department, July 25, 1991

APPEARANCES OF COUNSEL

*Spiegel, Pergament, Brown & Basso (John J. Basso* and *Marino D'Orazio* of counsel), for appellant.

*Martin, Clearwater & Bell (Barbara D. Goldberg* of counsel), for third-party defendant-respondent.

*Morris & Duffy (Patricia D'Alvia* and *Alan H. Sproul* of counsel), for defendants and third-party plaintiffs-respondents.

**OPINION OF THE COURT**

LEVINE, J.

Plaintiff's decedent was murdered March 10, 1987 in the parking lot of defendant Fishkill Health-Related Center, Inc. in the Town of Fishkill, Dutchess County. The alleged perpetrator of the crime was Michael Macklin, who was then under treatment for mental illness as a voluntary outpatient of defendant Dutchess County Department of Mental Hygiene (hereinafter DMH). Plaintiff, decedent's husband, sued, among others, defendants Dutchess County, Dutchess County Department of Health and DMH (hereinafter collectively referred to as the Dutchess County defendants) for wrongful death, pain and suffering, and derivative damages. Liability against the Dutchess County defendants was asserted on the basis of negligent supervision, counseling, medicating, release and/or control of Macklin. The Dutchess County defendants in turn commenced a third-party action against Werner Cohn, a consulting psychiatrist who periodically saw Macklin for evaluation and prescription of medication at DMH's clinic in the City of Beacon, Dutchess County.

After complete joinder of issue and extensive pretrial discovery, Cohn moved for summary judgment dismissing the third-party complaint. Plaintiff submitted papers in opposition, cross-moved for further discovery and depositions, and also sought leave to amend his complaint to add Cohn as a defendant. The Dutchess County defendants then cross-moved for summary judgment. Supreme Court granted the motions for

summary judgment of Cohn and the Dutchess County defendants and denied plaintiff's motion. Plaintiff then moved to renew. The court granted plaintiff's motion and, upon renewal, adhered to its original decision. Plaintiff appeals from the orders entered upon both decisions.

■ There should be an affirmance. The underlying and largely uncontested facts from the depositions and documentary evidence were that Macklin, age 24 at the time of the murder, was first referred to the Beacon clinic of DMH in early January 1985 after displaying paranoid symptoms and slashing a mattress with a knife at the emergency room of a local hospital. He was involuntarily admitted to a State psychiatric hospital for several days and then released for outpatient treatment. At that time Cohn made a diagnosis of "[s]chizophreniaform psychosis". Macklin was then seen by Cohn every two weeks as an outpatient. However, he was again committed to the State hospital for short periods in March and June 1985 because of suicidal ideations and hallucinations. Following discharge from the hospital in July 1985, he was referred to a Special Services Team of DMH for intensive outreach services to keep him functioning in the community. Part of the service plan was to see Cohn once every four weeks. His initial service plan reported poor impulse control and some drug substance abuse.

In January 1986, Macklin was arrested for robbery in the second degree, released on bail and eventually sentenced to local jail time during the summer of 1986. Nevertheless, between July 1985 and November 1986, Macklin was maintained in the community by the Special Services Team. Except during the period of his incarceration, he reported regularly to the clinic, had only one occasion when his blood or urine tests showed use of any drugs (i.e., marihuana), worked part time and displayed no psychotic symptoms.

Macklin's last hospitalization before the murder was in November 1986. He was involuntarily admitted after expressing concern over his desire to "hurt someone". During the two weeks he was in the psychiatric hospital he assaulted another patient. However, the hospital records described rapid improvement and cooperativeness, including indicating remorse for the assault on the patient.

His apparent progress toward stabilization continued upon discharge from the State psychiatric hospital in late November 1986. He lived in the same building as his parents, was in

regular contact with his caseworker from the Special Services Team and was in regular attendance at a sheltered workshop. Although on one occasion the workshop reported some "confusion of thought", his general performance there was extremely satisfactory. Macklin last saw Cohn on February 13, 1987. He told Cohn he was taking his antipsychotic medication regularly and denied any hallucinations or feelings of anger. He was neatly dressed and free of any psychotic symptoms. Cohn assessed him "definitely" as not then being a danger to himself or others.

The Special Services Team learned on March 3, 1987 that Macklin had again been arrested and then remanded to jail when the unit supervisor received telephone calls from a Beacon City Court Judge relating that Macklin was in custody as a result of throwing a rock through a plate glass window at a local bar. The Judge voiced concern as to Macklin's dangerousness and passed on information from his family that he had not been taking his medication. A request was made for Macklin to be seen and evaluated at the jail. The unit supervisor replied in substance that Macklin was the primary responsibility of the criminal justice system while in custody and suggested that the court could get Macklin evaluated by ordering a psychiatric examination to determine his competency to stand trial. The Judge replied that he could not order such an examination because Macklin appeared calm and coherent in court. Nevertheless, Macklin's caseworker visited him in jail and requested that the jail psychiatrist see him and prescribe his medication.

Macklin was released from jail March 6, 1987. He called his caseworker on March 9, 1987, informed her that he was back working at the sheltered workshop and made an appointment to see the caseworker March 11, 1987. The murder took place before that appointment could be kept.

■ The foregoing evidence presented a prima facie defense to plaintiff's essential theory of liability against Cohn and the Dutchess County defendants that they were negligent in failing to have recognized that Macklin was homicidal following the rock-throwing incident and then in failing to have decisively intervened by committing him before the murder. Cohn was never notified of Macklin's arrest for breaking the window of the bar until after the murder. He last saw Macklin February 13, 1987. At that time, Cohn thought Macklin free of psychotic symptoms and not dangerous. There was little if anything in that visit, or the earlier periodic appointments

after Macklin was discharged from the State hospital in November 1986, which would have alerted Cohn to his instability and dangerousness. This proof presented a classic defense under the doctrine that a mental health practitioner is not responsible for harm inflicted by a patient so long as the faulty treatment, if any, is at most an error in the exercise of professional judgment (see, Schrempf v State of New York, 66 NY2d 289, 295).

Likewise, the proof before Supreme Court supported the defense of the Dutchess County defendants based upon the exercise of professional judgment of Macklin's caseworker, a registered nurse with two years of clinical experience in psychiatric services, and the unit supervisor, a certified social worker with a Master's degree. The duty of the Dutchess County defendants to control Macklin's behavior was limited inasmuch as he was only a voluntary outpatient at the time of the murder (see, supra, 66 NY2d, at 296). The proof submitted on the motion indicated that a conscious decision was made by the professional staff of DMH to defer to the mental health evaluation and treatment resources of the criminal justice system while Macklin was in custody rather than to involve Cohn in making an evaluation and prescribing new medication at the jail. Having Macklin evaluated by the jail psychiatrist was a procedure Cohn directed when Macklin was previously incarcerated in August 1986.

Moreover, the psychiatric staff of DMH did not simply ignore the Beacon City Court Judge's apprehensions and disclosure that Macklin was not taking his medication (cf., Huntley v State of New York, 62 NY2d 134, 137; Clark v State of New York, 99 AD2d 616, 617). Rather, Macklin's caseworker responded by visiting him at the jail and requesting that he be seen by the jail psychiatrist and prescribed new medication. Whether this was a sufficient response involves a question of the exercise of professional judgment, particularly in view of the facts that (a) Macklin had not required involuntary hospitalization following previous arrests or incarcerations, (b) he appeared calm and coherent on his court appearance, and (c) following his release from jail he resumed attendance at the sheltered workshop, voluntarily contacted his caseworker and made arrangements to see her (see, Wilson v State of New York, 112 AD2d 366, 367; Taig v State of New York, 19 AD2d 182, 183 [Bergan, P. J.]). The record is entirely devoid of evidence that, after Macklin was released from jail, he exhib-

ited any signs of a markedly deteriorated mental state *(cf., Clark v State of New York, supra).*

■ Plainly, the conclusory averment of the affidavit of plaintiff's psychiatric expert submitted in opposition on the original motion for summary judgment, stating only that the evidence demonstrated "departures from accepted standards of practice in the field by [DMH and Cohn]", was not sufficient to create a triable issue as to whether the conduct of Cohn and the staff of DMH constituted exercises of professional judgment rather than deviations from accepted standards of practice *(see, Mohan v Westchester County Med. Center,* 145 AD2d 474, 475). Nor was this deficiency cured by the additional submission on plaintiff's motion to renew. The principal submissions on the renewal motion consisted of affidavits from Macklin's father, sister, the Beacon City Court Judge before whom Macklin appeared and a second statement from plaintiff's psychiatric expert. None of the affidavits added anything of significance to cure the lack of notice to Cohn or DMH of possible homicidal tendencies on Macklin's part. The affidavit of Macklin's father and the Judge confirmed that Macklin was calm and lucid on his appearance in court. Thus, these affidavits do not change the conclusion that the response of DMH staff to Macklin's arrest and the telephone calls of the Judge was at most an error of professional judgment not giving rise to liability.

The affidavit of plaintiff's forensic expert submitted on the renewal motion does not change the foregoing determination. In only one respect is this affidavit less conclusory than that previously submitted in opposition to the original motions for summary judgment. Here, plaintiff's expert specifically alleges that it was a deviation from accepted standards of psychiatric practice for the staff of DMH not to have passed on to Cohn the information that they received regarding Macklin's arrest and reported failure to take his medication and not to have consulted with him on an appropriate response. As previously discussed, however, there were numerous factors supporting DMH's actual response by having his caseworker visit Macklin in the jail and request the jail psychiatrist to see him and prescribe his medication rather than to involve Cohn. Because plaintiff's psychiatric expert did not address, let alone negate, these factors, the affidavit fails to create a triable issue on whether accepted psychiatric practice was violated here *(see, Schrempf v State of New York,* 66 NY2d 289, 295-296, *supra; Topel v Long Is. Jewish Med. Center,* 55 NY2d 682, 684-685;

*Centeno v City of New York,* 48 AD2d 812, 813, *affd* 40 NY2d 932).

■ Finally, we reject plaintiff's contention that the motions for summary judgment should have been denied as premature because plaintiff had been unable to complete discovery. Plaintiff has had extensive disclosure through depositions and discovery of records of DMH, including the contemporaneous notes of Macklin's caseworker during the relevant period and departmental memoranda. Plaintiff has not demonstrated any significant possibility beyond speculation or surmise that further discovery would yield evidence to create any triable issue *(see, Rastelli v Goodyear Tire & Rubber Co.,* 165 AD2d 111, 114).* We note also our conclusion that plaintiff's motion to compel DMH to produce Macklin's caseworker for deposition did not demonstrate plaintiff's diligent efforts to obtain her testimony, in view of the prior notice plaintiff received indicating that the caseworker had terminated her employment with that agency several months earlier and giving plaintiff her last known address.

MIKOLL, J. P., YESAWICH, JR., MERCURE and CREW III, JJ., concur.

Ordered that the orders are affirmed, with one bill of costs.